## SUPREME COURT.

In the matter of the petition of ANDREW BOYD, Assessor of the town of Groveland agt. MARY GRAY.

The residence of an inhabitant of a town during the months of June, July and August, therein, gives to the assessors of the town jurisdiction over his person and property, for the purposes of completing an *assessment* of his property.

If there is any change of residence or ownership of property after the 1st day of July, it does not affect the assessment roll. Any changes which the assessors are authorized to make after that time are simply such as may be required to correct mistakes.

If assessors err in their decision, upon the application of a person to correct his assessment made after the 1st of July, it is not such an error as invalidates the assessment or the tax afterwards based upon it.

The omission to copy upon the tax roll the *affidavit* made by the assessors, and annexed to the original roll, before its delivery to the supervisors, is not a jurisdictional error, and cannot be set up to prevent the collection of the tax.

Where, on the 1st day of August, an assessment has been properly made of the property of an inhabitant of the town, he cannot after that time shift his property and convert it into other property not liable to assessment, and, on the day fixed for reviewing the assessments by the assessors, apply and have his name and the amount assessed against him stricken from the assessment roll.

*Monroe General Term, December,* 1867.

*Present,* J. C. SMITH, WELLES *and* E. DARWIN SMITH, *Justices.*

THIS is a proceeding commenced under chapter 318 laws of 1842, by Andrew Boyd, one of the assessors of the town of Groveland, Livingston county, New York, against Mary and Margaret Gray, to enforce the payment of a tax levied against them in said town. The defendants are residents of said town, and were each assessed for $1,400, personal property, on the roll of 1865. Up to about the first of August,

1865, they severally had this amount of personal property liable to taxation, but it was then converted into non-taxable government securities. On the 15th day of August, 1865 (the day appointed by the assessors for the revision of their roll), these defendants appeared before the assessors and applied to them to reduce the value of the personal estate severally set down to them in said roll, and in all respects complied with the statute in such case made and provided. The fact of such conversion into non-taxable bonds before such review day was not disputed by said assesors, but they refused to reduce said assessment of $1,400, and failed to give to defendants any notice of their disagreement to the sworn valuation, as required by statute, and a tax was thereafter levied upon the same. It appears from a stipulation annexed to the return herein that there was no affidavit nor certificate of said assessors written upon, annexed to or in any way forming a part of the tax roll delivered to the collector of said town, and on which the tax was alleged to have been demanded of these defendants, to recover which this proceeding was commenced; but in all other respects it was a fair copy of the original assessment roll.

A fine was imposed upon each defendant at the Livingston special term, in August, 1866, sufficient to pay the tax and costs.

This is an appeal from that order.

The following opinion was given at special term:

JOHNSON, Justice. There is no question made but that the persons proceeded against (whom for convenience I shall denominate defendants) were regularly and properly assessed in the first instance. They had severally the property for which they were assessed, up to and including the first day of August, which was then liable to be assessed and taxed in their hands. Their names were properly placed upon the assessment roll by the assessors, whose right and duty it was to place it there as they did, together with the just and true amount of the personal property each then had liable to tax-

ation. The statute requires the assessors to ascertain the names of all the taxable inhabitants of their respective towns, and also all the taxable property, real and personal, therein, between the first day of May and July in each year. (1 R. S. 390, § 8.) They are then required to prepare an assessment roll, on which they are to enter the names of the taxable inhabitants thus ascertained, and the property and the value · thereof. (Id. § 9.) This roll is to be completed on or before the first day of August, and a fair copy thereof made and left with one of the assessors. No question can be made, therefore, that on the first day of August these persons had been and were duly and legally assessed · for their taxable property. After this time the defendants shifted their property and converted it into other property not liable to be assessed; and on the day for reviewing the assessments made their affidavits of these facts, and claimed that their names and the amount assessed against them should be stricken from the assessment roll. This the assessors declined doing, · on the ground, amongst others, that they doubted their right to strike off as requested, under the facts presented.

· It is claimed on the behalf of the defendants that by this application, and upon the facts thus verified, the defendants had the legal right to have their names stricken from the roll with the assessments; that the assessors were thus ousted of their jurisdiction to retain such names and amounts upon such roll, and that the entry before made became and was wholly void as an assessment.

This position, I think, cannot be maintained with any show of reason. The assessment was then made and was complete. The assessors had undoubted jurisdiction to make it as it then was. The question before them was whether they should vacate it altogether, by reason of a new fact not affecting the validity of the original assessment. This question they were required to pass upon, and, if they decided erroneously, it did not affect the validity of the assessment. If they had jurisdiction, though they erred in the exercise of

it, their proceedings were not thereby rendered void and of no effect. A tax cannot be attacked and defeated collaterally, except for want of jurisdiction in the officers by whom it is imposed. Errors not going to the jurisdiction to act in the premises, cannot be reviewed or corrected in a proceeding like this.

But I am clearly of the opinion that the assessors decided correctly in refusing to strike out the assessment, not because they had not the power to do so, but because the property had been regularly and lawfully subjected to assessment and taxation in the defendants' hands, and against them. It does not follow, by any means, that because they had seen fit to shift it and exchange it for other property after the first of August, they were to escape taxation. They had had the benefit of it until it was assessed to them regularly, and I do not think they can exempt themselves from all liability by shifting it into other hands, after the roll is completed and the proper time for entering new names has elapsed. If such were to be the rule, great frauds might be practiced, and large amounts of taxable property be withdrawn from taxation altogether.

The opinion of DENIO, Ch. J., in *Mygatt* agt. *Washburn* (15 *N. Y. R.* 316) illustrates the principle. I entertain no doubt whatever that the assessors not only possess the power, but that it is their plain duty, to strike any assessment from the roll which has been erroneously or improperly placed there, at any time before their affidavit is attached and it is ready for delivery to the supervisor of the town. (*The People* agt. *The Supervisors of Westchester*, 15 *Barb.* 607.) While it remains in their possession and under their control, they have jurisdiction to correct any and all errors which are brought to their notice in a legal and proper manner. But this was no error. It was a legal and just assessment when it was made and entered, and never became otherwise. The assessment and tax were therefore both valid, and the defend-

ants were bound to pay the same when duly called upon for payment by the collector of the town.

The counsel for the defendants also object that the tax has never been duly demanded, for the reason that the affidavit, which the statute requires the assessors to make and attach to their corrected roll, before delivering it to the supervisor of the town, was not attached to the roll in the hands of the collector. It is argued that the roll and warrant furnish no evidence of authority to receive or collect the tax, unless the affidavit is also attached. But this clearly is not so. It is true that the proper affidavit must be attached to the completed assessment roll when it is delivered to the supervisor, or the board of supervisors will have no jurisdiction to impose the tax and issue their warrant for its collection, as was held in *Van Rensselaer* agt. *Witbeck* (3 *Seld.* 517). But this corrected roll does not necessarily, nor indeed usually, I think, go into the hands of the collector. The statute requires the board of supervisors to cause the corrected assessment roll, "or a fair copy thereof," to be delivered to the collector, with a warrant under their hands and seals annexed. (1 *R. S.* 396, §§ 36, 37.) There is nothing to show that the corrected roll delivered by the assessors to the supervisor had not the proper affidavit attached; nor is it shown that the roll delivered to the collector with the warrant was not a fair copy of such corrected roll. In the absence of proof to the contrary, the presumption is that it was all regular. This presumption always obtains in favor of the due performance of official duty in such a case. The 35th section of the statute last referred to requires the board of supervisors to deliver to each supervisor the corrected roll of his town, or a fair copy thereof, to be filed in the town clerk's office of their respective towns. The original corrected roll was in fact delivered to the supervisor of the town, and filed in the town clerk's office, and has annexed to it the proper affidavit.

My conclusion, therefore, is that the tax was duly levied,

and payment·thereof regularly demanded of each defendant, and that they were guilty of misconduct in refusing to pay the same.

A fine must therefore be imposed on each defendant, sufficient to pay the amount of the tax and the costs of this proceeding.

The defendant Mary Gray appealed from this order to the general term.

ADAMS & STRANG, *for petitioner, appellant.*

I. This proceeding was unauthorized, for the reason that the moving papers show the defendant to have had in her possession, at the time such alleged demand was made, United States bonds sufficient in amount to pay the tax imposed upon her, and which bonds were subject to levy and sale by the collector of the town of Groveland. (*Sess. Laws* 1842, *ch.* 318, § 1.)

The statement in the affidavit of the collector, that levy could not be made upon them, is not the statement of a fact, but of his conclusion of law.

II. No valid assessment existed until the affidavit required by 1 Revised Statutes (5*th ed. p.* 913, § 25) to be made by the assessors was made and attached to the assessment roll, at which time it is admitted and was proved before said assessors that these defendants had no taxable property. (*Van Rensselaer* agt. *Witbeck,* 3 *Seld.* 521; *Mygatt* agt. *Washburn,* 1 *Smith,* 318.)

1st. The statute expressly provides that "When the assessors, or a majority of "them, shall have completed their roll, they shall severally appear before one of the "justices," &c., and make the affidvit in the form prescribed. By the language of this affidavit, the assessors are required to swear that the assessment roll contains (*i. e.,* as it exists when the oath is made) "a true statement of the aggregate amount "of the taxable personal estate of each and every person named in such roll," excluding such "property as is exempt by law from taxation." (1*st Rev. Stat.* 5*th ed. p.* 913, § 25.)

2d. Until the revision and correction is completed, and this affidavit is attached to such roll, the action of the assessors is merely preliminary, and in the nature of a notice or order to the parties severally named therein to show cause why they should not be assessed for the amounts specified in such·list. (*Wheeler* agt. *Mills,* 40 *Barb.* 644.)

The assessment certainly cannot be said to be completed so long as the assessors have not passed upon the same judicially, and have at their meeting for revision and correction a right to change, alter or modify any one or all of the names or sums on the same. The assessment roll, which the statute requires to be completed on or before the first day of August in each year (1 *R. S.* 611, § 17), is plainly only a consolidation of the minutes of the several assessors for the districts allotted to them, and may be, in fact often is, never seen after such consolidation by more than one of the assessors, until the day for revision and correction.

The petition in this case states, that after such review day "the assessment roll was duly *completed* by the said assessors," and the necessary affidavit written thereupon and certified by one of the justices of the said town of Groveland.

Boyd agt. Gray.

One assessor cannot make an assessment; it is the joint act of all, or a majority. (*People* agt. *Supervisors of Chenango County*, 1 *Kern.* 571.)

There can be no clearer statement of the law upon the question when is the assessment completed, than that given by BROWN, J., for the court, in *Mygatt* agt. *Washburn* (*p.* 318). He says: "I entertain no doubt but that the day on which the "assessment roll was signed, certified and delivered to the supervisor, was the com-"pletion of the assessment which forms the ground of the action."

3d. In the absence of any statutory provision as to the time when the assessment shall take effect, it is submitted that the rule of interpreting pleadings is applicable, and should control; which is, that they shall be construed as referring to the time when the pleading was verified. (*Voorhies' Code*, 8th ed. p. 320, *note a* ; *Prindle* agt. *Caruthers*, 15 *N. Y.* 426.)

4th. But it is claimed that the statute by express provision (1 *R. S. p.* 912, § 21) fixes the time when the assessment shall be operative as to parties who apply for a reduction : "It shall also be the duty of the assessors, whenever the valuation fixed by them, after such examination, shall exceed that sworn to by the aggrieved party or person, to indorse on the written examination the words 'Disagreed to by the undersigned assessors, under the rule prescribed for making assessments, by section 15, article 2, title 2, chapter 13, part 1 of the Revised Statutes, and in view of the obligations imposed by the deposition and oath subscribed and made on the *completion of the assessment roll*, to which this disagreement refers.' It shall be the duty of the assessors on the same occasion to furnish the aggrieved party or person a duplicate copy of the before mentioned written examination, together with the indorsement of disagreement aforesaid, duly signed."

It is evidently the intention of the statute that such indorsement shall stand as the judgment of the assessors upon the appeal, and that until such indorsement is made there is no judgment or entry of judgment. There is no evidence in this case of any judgment upon the appeal, and it appears affirmatively that no evidence of such judgment, which is the basis of this proceeding, was ever brought to the notice of the defendants. The court will not presume that such judgment was rendered. (*Sheldon* agt. *Wright*, 7 *Barb.* 39; *People* agt. *City of Brooklyn*, 21 *Barb.* 484.)

The assessors having failed to pursue the directions of the statute in making the indorsement and giving the defendants notice thereof, the assessment is unauthorized and void, as those provisions must be strictly complied with, and such compliance must appear affirmatively. (*Whitney* agt. *Thomas*, 23 *N. Y.* 281; *Sharp* agt. *Spier*, 4 *Hill*, 76, 92.)

5th. The objection raised by the opinion of the special term in this case, that the rule as claimed to exist in the preceding subdivision, if admitted, would open the door to great fraud, is a consequence of the defectiveness of the statute upon such point, and should be remedied by the legislature, not by judicial legislation.

III. Where application is made by any person to the assessors to reduce the value of real or personal property as set down in the assessment roll, the assessors act judicially in fixing such value, and are called upon to pass upon the evidence adduced before them; and when they have no ground in such evidence to fix a valuation different from that sworn to by the applicant for such reduction, they are bound to take and follow such statement under oath. (*Weaver* agt. *Devendorf*, 3 *Denio*, 117; *The People ex rel. Raplee* agt. *Reddy et al.* 43 *Barb.* 539.)

1st. As matter of fact, there is no dispute but that these defendants complied literally and exactly with the provisions of the statute. (1 *R. S. 5th ed.* 912, § 21.) They appeared before such assessors on the proper day, made application to have the value of their personal estate reduced, were examined under oath touching such value, and did not refuse to answer any question put to them touching the value or amount of

Boyd agt. Gray.

their personal property. It does not appear that any other evidence upon this point was called for, and that given states precisely that on or about the first day of August, 1865, and before such review day, these defendants converted all their taxable personal property into United States non-taxable bonds.

2d. Previous to the passage of chapter 176 laws of 1851, the assessors were bound to correct their assessment roll in accordance with the affidavit made and produced to them, in conformity with the statute. (*See cases above cited, and other authorities referred to in them.*)

3d. While such act of 1851 takes away the conclusiveness of an affidavit so made, it does not give, and was not intended to give. the assessors any right to fix such value arbitrarily, or any additional power further than the right of cross-examination and power to call for evidence supplementary to the affidavit. The statute, it is true, gives them the right " to fix the value thereof at such sum as they may deem just," but they are still bound by the usual rules of evidence applicable to judicial proceedings, and must decide upon the evidence adduced before them, unless such evidence is intrinsically defective or unreliable in its nature.

The opinion of this court in *People* agt. *Reddy* (43 *Barb. above cited*), decides this point fully and fairly. The court, E. D. SMITH, J., says : "He (the relator) testified " that he had no personal property liable to taxation except the capital stock of his " bank; and the board of assessors, I think, were bound to take his statement under " oath on that point.    *    *    *    They act judicially in fixing such value, " and are called upon to pass upon the evidence produced before them; and when " they have no ground in such evidence to fix a valuation different from that sworn " to by the person applying for such reduction, they are bound, I think, to take and " follow his statement under oath; as much so as the assesors were formerly required " to fix such value at the sum specified in the affidavit required in such cases by the " 15th section of article 2, chapter 13 of part 1st of the Revised Statutes."

The court thus holds that the rule is now substantially the same as prior to the passage of such act of 1851, except that the board of assessors, as a court, have the right to decide upon the weight of evidence adduced before them. Under the former statue, the court say, in *Weaver* agt. *Devendorf* (3 *Denio, above cited*), per BEAYDSLEY, J.: " In some particulars the duty of assessors is undoubtedly ministerial, but in fix- "ing the value of taxable property, the power exercised is in its nature purely "judicial. *With the exception* of real and personal estate, the value of which is sworn "to as authorized by law, the residue is to be valued, estimated and determined by "the assessors."

IV. The opinion of the special term shows a misapprehension on the part of Justice JOHNSON as to one of the main points in issue. *It assumes* that on the 1st day of August, 1866, " the assessment was then made and was complete," and that " the assessors had undoubted right to make it as it then was," and then proceeds to discuss the question whether the assessors were bound to *vacate it*. in consequence of the occurrence of new facts. Instead of this, the defendants claim expressly that, there being no assessment, the question was whether they should *then* be assessed for property previously disposed of.

V. No legal demand of the payment of the tax in question has ever been made upon the defendants Mary and Margaret Gray, and they cannot therefore be charged in this proceeding as with a contempt.

1st. The authority of the collector to demand taxes is based upon the assessment roll as corrected by the board of supervisors, or a fair copy thereof, with a warrant thereto attached under the hands and seals of the board of supervisors, or a majority of them. (1 *R. S.* 914, §§ 35, 36.)

No proceeding as for a contempt, penal in its nature, can be sustained, unless the

moving party shows that the provisions of the statute have been strictly and literally complied with; and in such proceedings no presumption obtains in favor of the performance of official duty. In *Metcalf* agt. *Messenger* (46 *Barb.* 325, *which was an appeal from an order made at special term, imposing a fine in a proceeding precisely similar to this*), the general term, per WELLES, J., say that, "In a proceeding to charge a party as for a contempt, 'no intendments of material facts should be indulged in;'" and the order appealed from was reversed because it did not affirmatively appear that the assessment was made by all or a majority of the assessors.

2d. The affidavit or certificate of the assessors being a necessary part of the assessment roll, the absence thereof is a defect apparent on the face of the process, and such a departure from that authorized by statute that no legal demand could be based upon it.

In *Van Rensselaer* agt. *Witbeck* (3 *Seld.* 517), the court held that the certificate is indispensable," and that "the proceedings would have been *fatally defective* if no "certificate had been attached."

If this be the law, and language is to be given the ordinary meaning, the "fair copy" which the statute provides may be given to the collector in lieu of the corrected assessment roll, *must contain* a copy of the affidavit or certificate, in order to be a "fair copy," and to authorize the collector to demand the several items of taxes.

3d. The stipulation in this case recites expressly that the tax roll delivered to the collector of Groveland, and by virtue of which these taxes were demanded, had "no "affidavit, nor copy affidavit, nor certificate of said assessors, written upon, annexed "to, or in any way forming a part" thereof. It was therefore incomplete, was neither the corrected assessment roll nor a fair copy thereof, and, so far from authorizing proceedings of a penal nature to be founded upon it, was no protection to the collector, because defective upon its face.

## A. J. ABBOTT, *for petitioner, respondent.*

This is an appeal from the judgment of this court at special term, made in a special proceeding, under laws of 1842, chapter 318, 1 Revised Statutes, 5th edition, page 919.

There is no dispute about the facts. The assessors were duly elected, &c.

The appellant was a resident of the town of Groveland, and taxable therein. (1 *R. S. 5th ed.* 909.)

The assessment was duly made between the first days of May and July, &c. (1 *R. S. 5th ed.* 909.)

The roll was duly completed before the first day of August; fair copy made, &c., and notices thereof duly made, &c. (1 *R. S. 5th ed.* 911, § 17.)

The assessors duly met on "appeal" day, and heard complaints, &c., including the complaint of the appellant herein. (1 *R. S. 5th ed.* 911, § 18.)

Assessed appellant $1,400 personal property; completed roll, verified in due form, and delivered it to supervisor before first day of September, and he delivered same to the board of supervisors at their next meeting. (1 *R. S. 5th ed.* 913, §§ 25, 26.)

The board of supervisors duly levied the tax of $65.71 against appellant, and the roll, with warrant, &c., was duly delivered to the collector, &c, (1 *R. S. 5th ed.* §§ 35, 36.)

The collector thereupon caused notices of the reception of the tax roll to be posted, &c., according to law. (1 *R. S. 5th ed.* 917.)

The collector, after the thirty days had expired, appellant having neglected to pay the tax, called on her, demanded payment, and she refused to pay, &c. (1 *R. S. 5th ed.* 918, §§ 3, 6.)

Boyd agt. Gray.

The appellant having no property liable to levy, but having property liable to pay taxes, the collector duly made his report to the assessors. (1 *R. S. 5th ed.* 919.)

The assessor, Boyd, thereupon instituted this proceeding. The court will see, by comparing the facts in the case with the several sections of the statute referred to, that everything necessary to be done to make the levy or tax valid, was regularly and strictly done.

But the appellant sold the bond and mortgage assessed after the assessment roll was completed, to wit., after the *first of July,* beyond which time the assessors could make no further assessment, *and at which time the tax payer's* liability to be assessed *for* a tax to be thereafter levied becomes fixed, such sale also being after the *first day of August,* when the roll was completed; and she claims exemption from the tax on account of such sale.

Thus we are brought to the only question in this case, viz.: *At what time* does an *assessment* or *valuation* of *property* by assessors, as a *basis for taxation* thereon, become complete, or so far complete as to preclude the tax payer from changing her residence, or one kind of property to another kind, for the purpose of evading the tax ?

We are content to rest this question upon the clear and sound opinion of his honor Mr. Justice JOHNSON, who decided this case at special term, and the opinion of the court of appeals in *Mygatt* agt. *Washburn* (15 *N. Y. R.* 316, 35 *N. Y. R.* 462)

*By the court,* E. DARWIN SMITH, J.   In the case of *Mygatt* agt. *Washburn* (15 *N. Y.* 320), it was held, that the assessment should be considered as made at the expiration of the time limited for making the inquiry, viz., on the first of July, and that if there is any change of residence or in the ownership of the property after that day, it does not affect the assessment roll.   The inquiry is then completed.   Any changes which the assessors are authorized to make after that time are simply such as may be required to correct mistakes.   The appellant in this proceeding was a resident of the town of Groveland, in June, July and August, 1865.   The assessors, therefore, clearly had jurisdiction of her person and property, when they made and completed their assessment roll.   If they erred in their decision. upon the application of the appellant to correct their assessment or reduce the amount or value of her personal property, it was not such an error as invalidated their assessment.   It was not a jurisdictional question; the error might have been reviewed upon *certiorari* at any time before they had delivered the roll to the supervisors. (*People* agt. *Reddy,* 43 *Barb.* 539.)   But the error could not affect the validity of the tax afterwards imposed, based upon such assessment.   I do not see, therefore, why the tax levied upon

the property of the appellant is not legal, and why the proceeding to enforce the same is not entirely regular and duly warranted by the statute under which it was instituted. The omission to copy upon the tax roll the affidavit made by the assessors, and annexed to the original roll, before its delivery to the supervisors, is not a jurisdictional error, and cannot be set up to prevent the collection of the tax. (*Parish* agt. *Golden,* 35 *N. Y.* 462.)

I think the question presented was rightly decided at special term, and for the reasons there given, and that the order appealed from should be affirmed, with costs.